Sharon Fleming PERRY, Plaintiff,

v.

METROPOLITAN SUBURBAN BUS AUTHORITY a.k.a. MTA Long Island Bus and Transport Workers Union, Local 252, AFL–CIO, Defendants.

No. CV 03–5388(ADS).

United States District Court, E.D. New York.

Sept. 28, 2005.

Harriet A. Gilliam, Esq., Riverhead, NY, for Plaintiff.

Law Offices of Christopher E. Chang, by Christopher E. Chang, Esq., of Counsel, New York City, for the Defendant the Metropolitan Suburban.

Colleran, O'Hara & Mills, LLP, by Edward J. Groarke, Esq., of Counsel, Garden City, NY, for the Defendant the Transport Workers Union.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This action arises out of claims by Sharon Fleming Perry (the "plaintiff" or "Perry") that her former employer, the Metropolitan Suburban Bus Authority a.k.a. MTA Long Island Bus ("LI Bus") wrong-

fully terminated her employment as a bus operator in violation of the equal protection and due process clauses of the Fourteenth Amendment in violation of 42 U.S.C. § 1983 ("Section 1983"); and that it conspired with the Transport Workers Union, Local 252, AFL–CIO ("Local 252" or the "Union") to deny the plaintiff her constitutional rights on the basis of her race in violation of 42 U.S.C. § 1985 ("Section 1985"). The plaintiff also alleges a cause of action under Section 1983 in that Local 252 violated the plaintiff's due process and equal protection rights. In addition, the plaintiff has alleged a cause of action against LI Bus based on racial discrimination under the New York State Human Rights Law.

## I. BACKGROUND

The facts in this case are somewhat complicated by various hearings, steps, an arbitration, a PERB Hearing and multiple causes of action against the two defendants.

From October 1993 until her termination on August 6, 2003, the plaintiff was employed by LI Bus as a full time bus operator. During this period of time, the plaintiff was a member of Local 252, which is recognized by LI Bus as the exclusive representative of certain employees, including the plaintiff, for the purpose of collective bargaining negotiations and the settlement of grievances. A collective bargaining agreement between LI Bus and Local 252 was in force from December, 1999 through December, 2002 (the "CBA").

On August 16, 2002, the plaintiff became ill and was unable to work as a bus operator. She never returned to this position. During the time the plaintiff was out of work, she was diagnosed with various ailments including cardiomyopathy, congestive heart disease, hypertension and asthma causing her to be absent from work on sick leave.

During the period from August 16, 2002, when she was first unable to work, until January 31, 2003, when she took a Vehicle & Traffic Law ("VTL") Article 19A bus driver's road test, the plaintiff was examined by at least four physicians. On her part, she was examined and treated by Dr. Scott Brown and Dr. Aubrey Lewis. In addition, she was periodically examined by Dr. Burton Miller, the LI Bus Medical Director and, on two occasions, by an Impartial Medical Evaluator ("IME"), Dr. Martin Stern. These various doctors made many diagnoses, but apparently, all agreed that she was suffering from hypertension, cardiomyopathy and congestive heart disease.

During this period, the plaintiff was hospitalized twice for heart-related and other illnesses.

In December 2002, Dr. Stern cleared the plaintiff to return to work and, on January 31, 2003, she took the Article 19A road test. The plaintiff testified that upon arriving at the test site, she told the bus inspector that she had a cold and didn't feel well. However, the inspector said she had to do the test that day. The road test was short-lived. After the plaintiff pulled away from headquarters, she made two right turns. At that point, she told the inspector that she was dizzy, light-headed and felt a cramp in her left arm. She then told him that she could not complete the road test, pulled into the garage and parked. Altogether, she was on the bus about ten minutes.

The plaintiff was then referred to Dr. Stern for a second medical examination. Dr. Stern reported that the plaintiff had medical problems that could never be corrected; and that she would never be able to be a 19A certified bus operator.

Conversely, the plaintiff's physician Dr. Lewis, in a March 17, 2003 letter, said that she was "presently stable" and, as of March 10, 2003, she may return to full duty as a bus operator. Ultimately, the plaintiff's employment as a bus operator was terminated as of August 6, 2003 because of her permanent medical conditions involving her heart and hypertension and her alleged inability to pass the Article 19A road test and to safely operate a bus.

## II. THE ADMINISTRATIVE PROCEEDINGS

The plaintiff was involved in a number of administrative proceedings and hearings.

### A. The Contractual Arbitration Proceeding

Upon receipt of IME Dr. Stern's recommendation that the plaintiff was permanently disabled by her heart problems, LI Bus moved in April 2003 to terminate Perry for not having the required certification under VTL Article 19A. The initial disciplinary grievance Step I was scheduled for April 23, 2003 before her Location Chief, John Freeman, where she would be represented by her Local 252 Shop Steward, Grover Howell ("Howell"). At this time Howell ascertained for the first time that Perry had already been sent to an IME and was deemed medically disqualified by Dr. Stern.

Because Howell considered Dr. Stern's unilateral selection by LI Bus to be a breach of the CBA, Howell adjourned the April 23, 2003 Step I disciplinary grievance. He filed a contractual grievance on behalf of Perry and the Union the same day. On April 29, 2003, an arbitration hearing was held on the contractual grievance filed by Howell on behalf of the Union. The issue at the contractual arbitration between LI Bus and the Union was whether the unilateral selection of the IME by LI Bus was in violation of the CBA. The question of the plaintiff's medical evaluation or termination was not an issue in this contractual arbitration. By an award dated May 28, 2003, the Impartial Arbitrator, Shelly Friedman, ruled that although LI Bus violated the CBA by unilaterally selecting the IME, this was harmless error, in any event, because both parties would have selected Dr. Stern in that the Union and LI Bus had both used Dr. Stern in the past as an IME.

### B. The Step I Disciplinary Grievance Proceeding

This rescheduled Step I disciplinary grievance proceeding to terminate the plaintiff's employment was conducted on July 21, 2003. Apparently, Howell, the Union representative, was given very short notice, less than one day, and he tried very diligently, without success, to contact the plaintiff, who was not present at the Step I Hearing.

On July 21, 2003, at the Step I Hearing, Howell requested an adjournment because Perry was not present. Freeman, the LI Bus representative, denied Howell's adjournment request and the hearing proceeded against Perry without her presence. Freeman sustained Perry's termination for failure to meet VTL Article 19A's requirements for certification. Freeman inserted "GUILTY" on the Step I disciplinary grievance form

The Union appealed from the Step I decision. By letter dated July 24, 2003, Perry was notified by the defendant's Senior Manager for Labor Relations, Carl Macchio of the Step I decision and the Step II proceeding. Macchio's letter requested that she bring forth any medical documentation supporting her position and in opposition to Dr. Stern's conclusion.

### C. *The Step II Proceeding and Hearing*

Prior to the hearing the plaintiff contacted Howell who asked the plaintiff to bring any medical documentation supporting her position to the Step II grievance hearing. Perry met with Howell prior to the Step II hearing and reviewed her testimony.

On July 31, 2003, the Step II proceeding was held with Howell, Perry and Macchio present. The plaintiff did not produce any additional medical documentation to dispute Dr. Stern's determination that she could no longer work as a bus operator. The decision to terminate her was sustained based on the reports of Dr. Stern and the arbitration award permitting his unilateral selection by LI Bus.

### D. *The New York State Public Employment Relations Board ("PERB") Proceeding and Hearing*

On or about September 29, 2003, the plaintiff filed an improper practice charge against the Union with PERB alleging a violation of the New York Public Employees' Fair Employment Act § 209–a.2(c). The plaintiff, represented by her present counsel, Harriet A. Gilliam, Esq., accused the Union of breaching its duty of fair representation by participating in the contractual arbitration and the disciplinary grievance Step I and Step II proceedings in an arbitrary, discriminatory or bad faith manner. LI Bus was named as a statutory party. There was a hearing before an ALJ on October 27, 2004. The Court finds that the issues that arose at the PERB Hearing and the evidence in support of those issues are the same as some of the issues in this federal action.

At that hearing, the parties agreed to three stipulations as follows:

(1) Dr. Stern, the person designated by the employer to perform the assessment of Perry's fitness, found her to not be fit for duty under VTL Article 19–A;

(2) The person designed to perform the fitness assessments of Perry in December of 2002 and February of 2003 was not jointly selected by the employer and the Union;

(3) The Union proceeded to arbitration on the issue of the doctor having not been jointly selected.

Among the findings by the ALJ in this administrative proceeding is the following:

> By her own admission she (the plaintiff) had no reason to believe that she was treated differently than other TWU members similarly situated, making a discrimination allegation not viable.

All of the allegations against the Union were dismissed with the exception, not relevant in this action, that the Union should not have told her that the Step II disciplinary grievance opinion sustaining the termination would be appealed to arbitration when there was no contractual mechanism to do so.

With regard to the plaintiff not being present at the Step I hearing and the arbitration, the ALJ made the following finding:

> Based on the foregoing, I find that Perry's proof fails as to the TWU's failure to notify her of her arbitration and the July 21 grievance hearing and the motion to dismiss in those regards is properly granted.

Both parties appealed to the Public Employment Relations Board. In its decision, dated June 8, 2005, the Board held:

> Perry introduced no evidence of discrimination or improper motivation toward her on the part of TWU, generally, or Howell, specifically. TWU's conduct must, therefore, be examined to determine if the union was arbitrary in its

handling of Perry's grievances. We find that it was not.

As the ALJ found with respect to notifying Perry of the scheduled arbitration on the contractual grievance, there was no other evidence of arbitrariness, bad faith or discrimination. The decision to proceed to arbitration and the manner in which the grievance would be processed were TWU's to make. We afford employee organizations a wide range of reasonableness in making evidentiary and tactical decisions in the investigation and processing of grievances. TWU's decision to proceed with the arbitration without Perry was not arbitrary and did not violate the Act.

Neither was TWU's failure to notify Perry about the scheduling of the Step 1 hearing on the termination grievance violative of the Act. Perry, in her direct case, did not prove arbitrary, discriminatory or bad faith behavior by TWU. Howell testified about his attempts to reach Perry in the short time allotted between his notification and the scheduled date of the hearing. Whether he could have done more to reach her is not the issue we must decide. There is no dispute that he tried to reach her, even though Perry testified that the telephone numbers Howell used were in working order. Howell appeared on Perry's behalf and represented her interests. He immediately appealed the adverse Step 1 decision. We, therefore, cannot find that TWU's conduct in this regard was arbitrary, discriminatory or taken in bad faith.

### III. DISCUSSION

#### A. The Standard Rule 50 Motion for a Judgment as a Matter of Law

In *This Is Me Inc. v. Elizabeth Taylor*, 157 F.3d 139 (2d Cir.1998), the Second Circuit stated:

[T]he recent adoption of term 'judgment as a matter of law' to replace both the term 'directed verdict' and the term 'judgment n.o.v.' was intended to call attention to the close relationship between Rules 50 and 56. A district court may not grant a motion for a judgment as a matter of law unless 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.' *Cruz v. Local Union No. 3, Int'l Bhd. Of Elec. Workers*, 34 F.3d 1148, 1154–55 (2d Cir.1994) (quoting *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970)) (internal quotation marks omitted). Weakness of the evidence does not justify judgment as a matter of law; as in the case of a grant of summary judgment, the evidence must be such that 'a reasonable juror would have been compelled to accept the view of the moving party.'

*Piesco*, 12 F.3d at 343.

Very recently, the Second Circuit reiterated the standard for a Rule 50 motion for a judgment as a matter of law. In *Fairbrother v. Morrison*, 412 F.3d 39 (2d Cir. 2005), on June 14, 2005, the Second Circuit stated:

Judgment as a matter of law in jury trials is provided for in Federal Rule of Civil Procedure 50. It may be granted against a party with respect to "a claim or defense that cannot ... be maintained or defeated without a favorable finding" on an issue for which "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). This circuit has stated that judgment as a matter of law "may only be granted if there exists 'such a complete absence of

evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture,' or the evidence in favor of the movant is so overwhelming 'that reasonable and fair minded [persons] could not arrive at a verdict against [it].'" *Luciano v. Olsten Corp.*, 110 F.3d 210, 214 (2d Cir. 1997) (quoting *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1154 (2d Cir.1994)) (alterations in original). The motion should be granted "only if [the court] can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been compelled to accept the view of the moving party." *Piesco v. Koch*, 12 F.3d 332, 343 (2d Cir.1993). The Court cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury. *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir.2001) (quoting *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 367 (2d Cir.1988)).

## B. *Analysis of the Plaintiff's Six Causes of Action*

With these standards in mind, the Court will now review the plaintiff's three causes of action against defendant LI Bus and three causes of action against the defendant Union.

### (1) *First Cause of Action—Section 1985 Conspiracy Against Both Defendants*

In this first cause of action the plaintiff alleged in the complaint that the defendants "conspired to deny plaintiff her equal protection and due process rights under the U.S. Constitution by denying plaintiff the opportunity for a grievance and arbitration hearing on the issue of her ability to return to work and ultimately on the issue of the termination of her employment, all in violation of Section 1985."

The complaint does not specify which subdivision of Section 1985 she claims were violated by the defendants. Section 1985(1) does not apply to the facts in this case. This section prohibits two or more persons from conspiring to prevent, by force or intimidation, a person from accepting or holding office in the United States, or to induce any officer of the United States to leave the place where his duties are required to be performed.

Section 1985(2) also does not apply. Section 1985(2) prohibits two or more persons from conspiring to obstruct justice by intimidating a party, witness, or juror in any court of the United States.

Therefore, by process of elimination, Section 1985(3) must be the law referred to in the first cause of action.

With respect to Section 1985(3), a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *See Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir.1999). Significantly, the conspiracy must also be motivated by " 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action'" *Thomas*, 165 F.3d at 146 (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs., Corp.*, 7 F.3d 1085 (2d Cir.1993)). In addition, the plaintiff must allege that the conspiracy was " 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'" *Bray v. Alexandria Women's Health Clin-*

*ic,* 506 U.S. 263, 268, 113 S.Ct. 753, 758, 122 L.Ed.2d 34 (1993) (quotation omitted).

With respect to this subsection of Section 1985, Perry failed to allege a conspiracy motivated by any racial or class-based animus. *See Temple of the Lost Sheep, Inc. v. Abrams,* 930 F.2d 178, 185 (2d Cir.1991) (claim under 42 U.S.C. § 1985(3) dismissed as the complaint was "couched in terms of conclusory allegations and failed to demonstrate 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action' as required by § 1985"); *see also Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999).

■ However, even overlooking the pleading deficiency, the plaintiff failed to present any evidence of a conspiracy of any kind between the Union and LI Bus. To the contrary, the actions of the Union were properly protective of the plaintiff's rights and were adversarial in nature to LI Bus. (See, for example, the Step Hearings and the Arbitration). Perry herself offered no testimony even vaguely inferring a conspiracy. There is no evidence before this jury that there was any "agreement" expressed, implied or tacit, between the Union and LI Bus to terminate the plaintiff's employment. On the contrary, the Union fought to preserve her job. There is no evidence of any communication, oral or written, between LI Bus and the Union regarding any event leading to the plaintiff's termination, specifically including the road test. There was no conspiracy here.

Further, there is no evidence before the jury of any violation of equal protection, or any racial or class-based discrimination. The only evidence in that regard is that about a year prior to the plaintiff's termination, one individual named Calabrese, a white bus operator was permitted to return to the job after being out on sick leave for a heart condition. However, the evidence is clear that Calabrese was sent for an IME evaluation which determined that he *was able* to return to work In addition, he passed the road test. This is a different factual situation and dramatically different than the IME determination and the road test in Perry's case. The Court finds that there was no different treatment of similar situations between Calabrese and the plaintiff and no violation of equal protection.

Accordingly, the defendants' motion to dismiss the first cause of action against both defendants based on a Section 1985(3) conspiracy is granted.

*(2) Second Cause of Action—Section 1983—Equal Protection—Against LI Bus*

In the second cause of action, the plaintiff alleges that "Defendant employer has subjected plaintiff to differential treatment than white employees who were permitted to return to work, on account of her race and in violation of the equal protection clause pursuant to Section 1983 of the Civil Rights Act."

■ LI Bus is being sued as a quasi-municipality, and, as such, can be liable under 42 U.S.C. § 1983. However, municipality liability under Section 1983 cannot be based on a theory of *respondeat superior. See Board of the County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 404–05, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Jeffes v. Barnes,* 208 F.3d 49, 56–57 (2d Cir.2000); *DeCarlo,* 141 F.3d at 61. Rather, the plaintiff must show that the constitutional violation, if there is one, by a municipal employee resulted from a custom, policy, or practice of the municipality. *See Monell,* 436 U.S. at 694, 98 S.Ct. 2018; *De-*

*Carlo v. Fry,* 141 F.3d at 61; *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir. 1995). A plaintiff need not demonstrate that the municipality had a formal rule or regulation that causes the deprivation. *See Vann,* 72 F.3d at 1048; *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991).

■■ Also, a plaintiff can show a municipal custom, policy or practice by establishing that an official who is a final policymaker directly committed or commanded the constitutional violation, or by showing that a policymaker indirectly caused the misconduct of a subordinate municipal employee. *See Monell,* 436 U.S. at 690, 98 S.Ct. 2018; *Jeffes,* 208 F.3d at 61. Liability based on indirect causation can be established by showing " 'acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity.' " *Jeffes,* 208 F.3d at 61 (citation omitted).

■ A municipal policy or practice can also be inferred from a failure by policymakers to train their subordinates amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. *See City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *DeCarlo,* 141 F.3d at 61; *Ricciuti,* 941 F.2d at 123.

A plaintiff can also prove such deliberate indifference by showing "that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that its agents were violating citizens' constitutional rights." *DeCarlo,* 141 F.3d at 61; *Vann,* 72 F.3d at 1049 (holding that a plaintiff "may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference"). *Ricciuti,*

941 F.2d at 123; *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("[M]unicipal inaction such as the persistent failure to discipline subordinates who violated civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell.*")

■ "The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993); *see also Batista,* 702 F.2d at 397. In addition, an official policy practice or custom cannot be inferred from a single incident alleged in a complaint against a municipal employee not vested with policymaking authority. *City of Oklahoma v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Dwares,* 985 F.2d at 100; *Ricciuti,* 941 F.2d at 123.

■ Here, the plaintiff failed to establish any *Monell* liability against LI Bus. There was no proof of any custom, policy or practice to treat the plaintiff differently from white bus operators; nor were there any discriminatory actions by any policymaker of LI Bus. On the contrary, the LI Bus policies in evidence demonstrate strong and viable anti-discrimination and affirmative action rules in effect. As stated above, the one incident involving the white bus operator is not similar to the plaintiff's situation and failed to establish any constitutional violation or discriminatory conduct.

However, to complete the record, the Court will address the Section 1983 equal protection claim asserted by the plaintiff in her second cause of action.

The Fourteenth Amendment of the United States Constitution guarantees that

no state shall "deny to any person within its jurisdiction the equal protection of the laws." This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The plaintiff in this case claims that she was treated differently than "white employees who were permitted to return to work, on account of her race . . ."

■ Discriminatory treatment by government officials is sufficient to trigger assessment under the Equal Protection Clause. *See Lewis v. Thompson*, 252 F.3d 567, 590 (2d Cir.2001). If government action interferes with a "fundamental right" or discriminates against a "suspect class," it must be reviewed using the strict scrutiny analysis. Absent these circumstances, government action will ordinarily survive an equal protection challenge so long as the action is rationally related to a legitimate governmental purpose. *Plyler v. Doe*, 457 U.S. 202, 216–17, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1981). When government action discriminates against an individual for reasons other than an association with a class, the plaintiff is commonly referred to as a "class of one," rather than a "suspect class."

■ The Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair*, 627 F.2d at 609–10.

In this case, as stated previously, there is no evidence of racial discrimination by LI Bus, and, there is no dissimilar treatment by similarly situated bus operators regarding the only white worker who was permitted to return to work. Accordingly, on the merits, in addition to the Monell insufficiency, the plaintiff's second cause of action sounding in Section 1983 Equal Protection is dismissed for failure of proof.

(3) *Fourth Cause of Action—Section 1983 Due Process and Equal Protection—Against the Union*

In the fourth cause of action, the plaintiff alleged that the "Defendant Union violated plaintiff's due process and equal protection rights on account of her race, pursuant to Section 1983." The plaintiff asserted that the Union did this as follows:

> [I]n that it failed to advocate for plaintiff as it did for white employees with respect to plaintiff's right to return to her employment following medical clearance; and further failed to challenge or contest defendant employer's discriminatory treatment of plaintiff with respect to her terms and conditions of employment and right to return to work; and it further failed to exhaust all grievance and arbitration proceedings as it did for white employees with respect to plaintiff's right to return to work.

The Union contends that dismissal of the Section 1983 claim against the Union is warranted because it is neither a state actor nor acting under color of state law. The Court agrees.

Section 1983 provides in pertinent part:

> "Every person who, under color of . . . [state law] subjects, or causes to be subjected, any . . . person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law [or a] suit [in] equity. . . ."

42 U.S.C. § 1983. A violation is proven when "a person or persons acting under color of state law deprived a plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *McDarby v. Dinkins* 907 F.2d 1334, 1336 (2d Cir.1990) (citation omitted). Thus, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of his rights or privileges secured by the Constitution or federal laws. *Annis v. County of Westchester,* 136 F.3d 239, 245 (2d Cir.1998).

■■■ The plaintiff is unable to establish the first element because the Union was not a state actor and did not act under color of state law.

The Supreme Court has recognized that a party acts under color of state law when exercising power " 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Polk County v. Dodson,* 454 U.S. 312, 317–18, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)); *see also West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). For purposes of a Section 1983 action, a defendant necessarily "acts under color of state law when he abuses the position given to him by the State." *West,* 487 U.S. at 50, 108 S.Ct. 2250; *see also Christian v. Belcher,* 888 F.2d 410, 414 (6th Cir.1989) ("[B]efore a defendant may be held liable under Section 1983, that defendant must first *possess* power by virtue of state law, then *misuse* that power in a way that violates federal constitutional rights.").

With regard to a non-governmental entity, such as the Transport Workers Union, Local 252, in *Loce v. Time Warner Entertainment Advance/Newhouse Partnership,*

191 F.3d 256, 266 (2d Cir.1999), the Second Circuit explained that:

> The First Amendment applies only to state actors. In order to establish a First Amendment claim against a private entity based on the entity's relationship to the state, a plaintiff must demonstrate, *inter alia,* a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. Such a nexus may be found, for example, where a private actor has operated as a willful participant in joint activity with the State or its agents. In the absence of such a nexus, a finding of state action may not be premised on the private entity's creation, funding licensing, or regulation by the government. Nor is a private entity a state actor merely because its conduct is authorized by a state law, where its conduct is not compelled by the state.

*Id.* (internal quotation marks and citations omitted). Recently, the Supreme Court identified a "host of facts" that can bear on whether an activity may be attributable to the state: (1) when the state exercises its coercive power or significant encouragement; (2) when a private actor is a willful participant in joint activity with the state; (3) when an entity is controlled by the state or an agency thereof; (4) when an entity has been delegated a public function by the state; (5) when an actor is entwined with governmental policies; or (6) when the government is entwined in the entity's management or control. *See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 121 S.Ct. 924, 930 (2001).

■■■ So that, although the Union is not a state actor, it may nevertheless be liable in an action under Section 1983 if it "jointly engaged with state officials in the chal-

lenged action ... Private parties conspiring with [a state officer are] acting under color of state law ..." *Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *see also Rounseville v. Zahl,* 13 F.3d 625, 633 (2d Cir.1994) (The involvement of a state actor in a conspiracy may ground a Section 1983 claim against the other conspirators).

■ "Characterizing a private party as a 'state actor' is a fact-specific inquiry, and courts considering the issue typically look to such factors as the public function of the party's conduct, whether the private party acted under state compulsion, and the nexus between the party's conduct that was jointly undertaken with the state." *See Id.* at 939.

Relevant to the facts here, the cases show that a union generally is not a state actor. *See Ciambriello v. County of Nassau,* 292 F.3d 307, 323 (2d Cir.2002) in which the plaintiff's Section 1983 claim against the Union was dismissed due to its status as a private party. In *Ciambriello,* it was also held by the Second Circuit that conclusory allegations that the union intentionally participated in state activity, without details as to times and places, are insufficient to defeat a motion to dismiss a Section 1983 claim where the defendant is a private actor. Also, interestingly, where the union and the state are in adversarial positions, as in an arbitration hearing, allegations that the union and the state conspired to commit a Section 1983 violation "ring especially hollow." Equally relevant, *See, Ciambriello,* 292 F.3d at 324 (concluding that a union's failure to notify the grievant of upcoming grievance and arbitration hearings is insufficient to claim that a union acted under color of state law).

In this case, there is no evidence from which a reasonable jury could infer that the Union was a state actor. There is no evidence that the Union's conduct was jointly undertaken with the State, namely, LI Bus. To the contrary, the Union contested the right of LI Bus to refer this matter to Dr. Stern for an IME and went to arbitration to protect the plaintiff's rights. Also, the Union represented Perry in opposition to LI Bus at the Step I and Step II Hearings.

However, to complete the record, on the merits, the Court finds that there were no violations of the plaintiff's due process or equal protection rights by the Union. Nor was there any evidence adduced of racial discrimination on the part of the Union. In any event, because no individual was named on behalf of the Union, to impose liability under Section 1983, there must be proof of an official policy or custom in support of the alleged discriminatory or unconstitutional actions. There was no such proof in this case.

Accordingly, the motion of the defendant Union pursuant to Rule 50, to dismiss the fourth cause of action, is granted.

(4) *Sixth Cause of Action—Section 1981—Racial Discrimination Against the Union*

The Union argues that the PERB decision collaterally estops a cause of action based on racial discrimination. The Court will now review the relevant facts.

On September 29, 2003, Perry filed an improper practice charge alleging, as amended, that Local 252 breached its duty of fair representation in violation of Section 209–a.2(c) of the Public Employees' Fair Employment Act (the "Act") in its handling of two grievances and an arbitration on her behalf.

On October 27, 2004, a hearing was held before Administrative Law Judge Elena Cacavas (the "ALJ") at which both parties were present and represented by counsel.

At the hearing, Perry testified and was cross-examined regarding many of the same facts as are involved in this trial including: (1) her sick leave and her attempt to return to work; (2) the January 31, 2003 road test; (3) the grievances filed by Howell challenging her termination and the failure by LI Bus to comply with the joint selection requirement; (4) the alleged lack of notice regarding the April 29, 2003 arbitration and the July 21, 2003 Step 1 Hearing; (5) the entry of a plea of guilty on the Step 1 Form without her consent; and (6) Howell's failure to file an appeal.

Howell testified on behalf of Local 252 and was also cross-examined. The subject matter of Howell's testimony included: (1) his preparation, including his meeting with Perry, for the Step 1 Hearing; (2) his reasons for not attending the April 29, 2003 arbitration; (3) his attempts to reach Perry by telephone regarding the Step 1 Hearing; (4) the circumstances surrounding his failure to appeal the Step 2 decision.

The final witness at the October 27, 2004 hearing was MTA Labor Relations Senior Manager Carl Macchio who testified that Perry was not entitled to a retest on the road or a second medical examination once the arbitrator decided that the IME selection was harmless error, and that the Step 1 and Step 2 Hearings were a mere technical right that Perry had.

At the close of the plaintiff's case, Local 252 filed a motion to dismiss the charge.

On March 7, 2005, the ALJ issued a decision with regard to Local 252's motion to dismiss. The ALJ granted that part of the motion relating to the union's failure to notify her of the arbitration and the July 21 grievance on the basis that there was no evidence that Local 252's conduct was motivated by bad faith, or that it discriminated against her or acted in an arbitrary manner. The ALJ also denied that por-

tion of the motion to dismiss relating to Howell's representation that he would appeal the Step 2 Hearing while knowing that no appeal process was available to Perry.

Both parties appealed from the March 7, 2005 decision. By decision dated June 8, 2005, PERB upheld that aspect of the ALJ's decision that concluded that Local 252's failure to notify Perry of the arbitration and the July 21, 2003 hearing was not a violation of the Act. However, PERB reversed the ALJ's finding regarding Howell, finding that "the conduct of Howell in this case, without independent evidence of arbitrariness, discrimination, or improper motivation toward Perry, does not violate the Act."

■ Perry's sixth cause of action, only asserted against Local 252, alleges that the union violated her due process and equal protection rights on the basis of her race in violation of Section 1981.

The Union moves to dismiss this cause of action on the basis that it is barred pursuant to the doctrine of collateral estoppel. In particular, the Union claims that the determination made by the PERB, after a hearing in which both Perry and Local 252 were represented by counsel and had the opportunity to examine and cross-examine witnesses, that "[Local 252's] decision to proceed with the [Step 1] arbitration without Perry was not arbitrary and did not violate the Act ... [or] was discriminatory or taken in bad faith," and that "the conduct of Howell in this case, without independent evidence of arbitrariness, discrimination or improper motivation toward Perry, does not violate the Act" precludes relitigation of these issues. The Court agrees.

■ It is well-settled that "when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact proper-

ly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *University of Tennessee v. Elliott*, 478 U.S. 788, 799 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986) (quoting *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)); *see also DeCintio v. Westchester County Medical Ctr.*, 821 F.2d 111, 116 (2d Cir.), cert. denied. 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). In that regard, to determine what effect, if any, the PERB decision has in this case, the Court must determine

> (1) whether the agency acted in a judicial capacity,
>
> (2) whether the disputed issue was properly before PERB and the parties had an adequate opportunity to litigate it, and (3) the preclusive effect that would be given to a PERB decision by New York State courts.

*Scott v. Goodman*, 961 F.Supp. 424, 434 (E.D.N.Y.1997) (internal quotations omitted) (citing *Kirkland v. City of Peekskill*, 651 F.Supp. 1225, 1228 (S.D.N.Y.), *aff'd*, 828 F.2d 104 (2d Cir.1987)); *see also Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969) (In order for issue preclusion to bar subsequent litigation, " '[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling.' ").

In a case such as this, where the prior proceeding was before an administrative agency rather than a court, "New York courts additionally require that the agency's determination be 'quasi-judicial' in character...." *Scott*, 961 F.Supp. at 432

(quoting *Long Island Lighting Co. v. Imo Industries, Inc.*, 6 F.3d 876, 885 (2d Cir. 1993)); *Taylor v. New York City Transit Authority*, 309 F.Supp. 785, 791 (E.D.N.Y. 1970) ("In New York State the determination of administrative agencies acting in a judicial or quasi-judicial capacity are not open to collateral attack.").

As to the first factor, there is no doubt that PERB acted in a quasi-judicial capacity as section 205(5)(k) of the Public Employees' Fair Employment Act authorizes PERB to "conduct hearings in which it has the power to administer oaths ...., examine witnesses and documents, take testimony and receive evidence, [and] compel the attendance of witnesses and the production of documents by the issuance of subpoenas...." *See, for example, Scott*, 961 F.Supp. at 432 ("PERB acts in a quasi-judicial capacity.").

The Court now turns to the second factor, namely, whether the disputed issue was properly before PERB and whether the parties had an adequate opportunity to litigate it. At the outset, the Court find that both the plaintiff and the union had an adequate opportunity to litigate before PERB as each party was represented by counsel and there is no claim that any of the above mentioned procedural rights were denied to either party. Rather, the plaintiff contends that the second factor was not met because "there was no issue raised about a constitutional violation [at the PERB hearing] and such an issue would not have been necessarily for the ALJ to determine that Howell acted in bad faith by signing the request to appeal when he knew there could be no appeal." Plf. Mem. in Opp. at 28. The Court disagrees and finds that the plaintiff did not meet her burden of proving that she was denied the "full and fair opportunity to litigate the issue in [the] prior action...."

*Scott,* 961 F.Supp. at 434 (internal quotation omitted).

Even though the constitutionality of Local 252 and Howell's conduct was not before PERB, the preclusive effect of PERB's decision is not limited to its finding that the union and Howell did not violate the Public Employees' Fair Employment Act (the "Act"). According to the June 8, 2005 written decision,

> Perry's allegations are two-fold: that [Local 252] violated the [Public Employees' Fair Employment Act ("Act")] by failing to inform her of the step 1 termination grievance hearing and the contractual grievance arbitration and that [Local 252] violated the ACT when Howell led her to believe that [Local 252] would appeal the step 2 termination decision, then failed to do so, and failed to inform her that it did not file an appeal. Perry introduced no evidence of discrimination or improper motivation toward her on the part of [Local 252], generally, or Howell, specifically. [Local 252's] conduct must, therefore, be examined to determine if the union was arbitrary in its handling of Perry's grievances. We find that it was not.

PERB decision dated June 8, 2005 at 6.

To succeed on her cause of action alleging a violation of her due process rights, Perry must demonstrate that Local 252 violated her due process rights because its conduct was "arbitrary" and "outrageous." *See Natale v. Town of Ridgefield,* 170 F.3d 258, 262 (2d Cir.1999) ("For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.' "). Similarly, Perry's equal protection rights will only be "violated when the state distinguishes between individuals based on unreasonable, arbitrary, or capricious differences that are irrelevant to a

legitimate government objective." *Bernheim v. Litt,* 79 F.3d 318, 323 (2d. Cir. 1996).

Because a determination of Local 252 and Howell's motivation and intent were necessary and crucial to PERB's conclusion that the Act was not violated, and the same factual findings are central to the Plaintiff's due process and equal protection claims, collateral estoppel bars relitigation as to PERB's conclusion that Local 252 and Howell did not act with arbitrariness, bad faith or discrimination. *See O'Connor v. Mazzullo,* 536 F.Supp. 641, 644 (S.D.N.Y.1982) (The Court applied the doctrine of collateral estoppel "[a]lthough plaintiffs now style their causes of action in constitutional terms, the underlying and controlling factual issues ... are identical to those fully litigated in the PERB proceeding."). It is of no consequence that the issue of whether there was a constitutional violation was not before PERB. *See id.,* 536 F.Supp. at 643–44 ("In these circumstances, collateral estoppel should prevent relitigation of the facts determined in the PERB proceeding, even though this action presents constitutional challenges and even though the state tribunal is an administrative agency rather than a court."). Accordingly, the Court finds that the second requirement of the collateral estoppel doctrine is satisfied.

As to the third requirement, regarding the preclusive effect given to PERB decisions by New York State Courts, the Court notes that "[a] PERB determination cannot be collaterally attacked in the New York courts, though it may be subject to limited judicial review, and is treated as final by New York law." *Id.*

Accordingly, the Court gives preclusive effect to the PERB determination that Local 252 and Howell did not act with arbitrariness, discrimination or improper motivation toward Perry. Because this finding negates the plaintiff's allegations of an

equal protection and due process violations, the sixth cause of action against Local 252 is dismissed.

However, again on the merits, in the sixth cause of action, the plaintiff alleges that the "Defendant union subjected plaintiff to differential treatment in connection with its representation of her in that she was denied equal treatment and representation as afforded to white employees, in violation of Section 1981."

This claim is based upon 42 U.S.C. § 1981. That statute provides:

All persons within the jurisdiction of the United States shall have the same right in every state and territory *to make* and enforce *contracts* ... as is enjoyed by white citizens .... (emphasis added)

Section 1981 guarantees each person, regardless of race, freedom from discrimination in making and enforcing of contracts. If, because of race, a plaintiff is denied the right to contract entirely, or is given less opportunity to contract, or is offered less favorable contractual terms of unequal treatment she has a claim under Section 1981.

To establish a claim under Section 1981, the plaintiff must prove, by a preponderance of the evidence, that the conduct of the Union's employees in the adverse employment decision the plaintiff is complaining of were motivated by a discriminatory purpose—that is, the plaintiff must prove that the defendants' employees intentionally and purposefully discriminated against her because of her race. There is no such evidence in this case. Therefore, on the merits, regardless of the PERB decision, the motion by the Union to dismiss the sixth cause of action is granted.

(5) *The Seventh Cause of Action—New York Human Rights Law Against LI Bus*

In the seventh cause of action, the plaintiff alleges that: "Defendant employer violated plaintiff's rights under Section 296 of the New York State Human Rights Law in that they treated her differently than similarly situated employees on account of her race and disability as indicated by her unjust dismissal."

Claims brought under Section 296 of the New York Executive Law, New York's Human Rights Law, can be analyzed, for purposes of determining sufficiency of the evidence, in a manner virtually identical to those under Title VII of Federal Law. *See Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1177 (2d Cir. 1996); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 n. 4 (2d Cir.1995).

In order to establish a *prima facie* case of racial discrimination under Executive Law § 296, a plaintiff must plead and prove that (1) she is a member of a protected class, (2) she was discharged, (3) she was qualified to hold the position from which she was discharged, and (4) the discharge occurred under circumstances giving rise to an inference of racial discrimination (*see Ferrante v. American Lung Assn.,* 90 N.Y.2d 623, 629, 665 N.Y.S.2d 25, 687 N.E.2d 1308 (1997)).

Once a *prima facie* case is established, the burden shifts to the employer to rebut the presumption with evidence that the plaintiff was discharged for a legitimate, nondiscriminatory reason. If such evidence is produced, the presumption is rebutted and the factfinder must determine whether the proffered reasons are merely a pretext for discrimination or there is another reason based on discrimination. A factfinder who concludes that the proffered reasons are pretextual is permitted to infer the ultimate fact of discrimination but is not required to do so.

Here, there is very little evidence that the discharge occurred under circum-

stances leading to an inference of racial discrimination. However, that burden is a minimal one.

LI Bus offered the following statistics as to racial composition:

Statistics: Summary of Bus Operator Gender and Race

|  | 2003 |  | 2004 |  |
|---|---|---|---|---|
| Total Employees | 1138 |  | 1148 |  |
| Total Bus Operators | 666 |  | 676 |  |
| AfricanAm Operators | 333 | 50.00% | 341 | 50.44% |
| AfricanAM Female Operators | 66 | 9.91% | 67 | 9.91% |
| Total Female Operators | 114 | 17.12% | 116 | 17.16% |

Dft's Ex. L10 in evidence.

Also, it is important to note important principles present in every employment discrimination case.

Employers such as the defendant LI Bus are free to decide to terminate employees or make other employment decision for any reason other than unlawful discrimination. The defendant's conduct can be found to be unlawful discrimination in this cause of action only if this adverse employment decision was made because of the plaintiff's race or motivated by her race. So that the defendant LI Bus was entitled to make any business judgment it chose—however wise, however unfair or however misguided they may appear—so long as LI Bus was not basing its judgment, in part at least, on the plaintiff's race.

█ In order for the plaintiff to prevail, she must prove, by a preponderance of the evidence, that this adverse employment decision was made, at least in part, because of intentional racial discrimination. However, even assuming that the *prima facie* case has been established, there is overwhelming proof of nondiscriminatory reasons for the plaintiff's discharge, namely: (1) the IME report stating that her heart condition is permanent and disabled her from working as a bus operator; and (2) her failure to pass the road test.

It does not take a prophet or a wizard to determine that a quasi-municipal bus company would reasonably believe that a bus operator with permanent heart disease, such as cardiomyopathy and congestive heart disease, could be a hazard to the passengers she would carry on a daily basis *and* a potential liability to the bus company.

In the records of LI Bus, for all to review in the future, is the letter of Dr. Stern, dated April 8, 2003. Moreover, there is support for the decision by LI Bus to accept the determination of Dr. Stern, the IME, in his April 8, 2003 letter to Dr. Miller (Dft.Ex.F6) that states:

> Sharon Fleming–Perry has had a cardiac evaluation, including Stress Thallium Testing, echocardiogram, and Holter monitor. The patient has a dilated cardiomyopathy.
>
> I believe that because she gets symptomatic when driving a bus, it is not safe for her to drive a bus. She should be disabled from this type of employment.

Support for the decision of LI Bus to terminate the plaintiff in this medical report is from the plaintiff's own cardiologist, Dr. Aubrey Lewis, as follows:

> In fact, on January 30, 2003, the plaintiff herself signed a form in which she checked off the following entrees: (1) heart disease and (2) current and/or unstable heart disease.

Plf. Ex. E8.

LI Bus has advanced clear and unequivocal non-discriminatory reasons to support the decision to terminate the plaintiff's employment as a bus operator. Accordingly, the Rule 50 motion of the defendant LI Bus to dismiss the seventh cause of action, is granted.

## IV.  CONCLUSIONS

Accordingly, based on these decisions, the motion by both defendants, pursuant to Rule 50 to dismiss all the causes of action in the complaint at the end of the entire case, is granted and the complaint is dismissed in its entirety.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**